IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Charlotte N. Sweeney

Civil Action No. 1:20-cv-02028-CNS-GPG

JAMES JARVIS,

      Plaintiff,

v.

LORI MCLAUGLIN, RN, HAS,
CORRECT CARE SOLUTIONS LLC,
WELLPATH LLC,
BOARD OF COUNTY COMMISSIONERS OF MESA COUNTY,
MATT LEWIS, Sheriff, in his official capacity,
KURTIS HOMES, DO,
ALISSA EMBREE-NICHOLSON, RN,
RENEE WORKMAN, RN,
HEATHER MARTINEZ,
HEATHER STANFORD, RN,
SHAWNA ROCHELLE CHRISTENSEN, LPN,
NICKOLE CHANTEL CROOMES, LPN
DENISE MCALLISTER, LPN, and
KATELYN STULTS, MA,

      Defendants.

---

## ORDER

---

Before the Court is Defendants Board of County Commissioners of Mesa County and

Sheriff Matt Lewis's (collectively ("Mesa County's") Motion for Summary Judgment (ECF No.

134), and the Motion for Summary Judgment (ECF No. 144) brought by Correct Care Solutions,

LLC and Wellpath, LLC (collectively "CCS"), as well as Lori McLaughlin, RN, HSA; Kurtis

Holmes, D.O.; Alissa Embree-Nicholson, RN; Renee Workman, RN; Heather Martinez, RN;

Heather Stanford, RN; Shawna Rochelle Christensen, LPN; Nickole Chantel Croomes, LPN; Denise McAllister, LPN; and Katelyn Stults, QMAP (collectively the "Individual CCS Defendants'").[1] For the following reasons, Mesa County's Motion for Summary Judgment is GRANTED in part and DENIED in part, and the CCS Defendants' Motion for Summary Judgment is GRANTED in part and DENIED in part.

## I.     Background

This civil action arises from Defendants' alleged failure to provide constitutionally adequate medical care to Plaintiff James Jarvis, resulting in long-term and permanent injuries (*See* ECF No. 101). On October 17, 2021, Mr. Jarvis filed his Second Amended Complaint (*See id.*). Mr. Jarvis brings three claims against Defendants: a claim against the Individual CCS Defendants under 42 U.S.C. § 1983; a claim under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978), against Mesa County and CCS; and a negligence claim against the CCS Defendants (*see* ECF No. 101).

In its summary judgment motion, Mesa County contends Mr. Jarvis has failed to allege a direct liability claim against it and that he cannot show disputes of material fact exist regarding Mesa County's indirect liability under § 1983 (*See* ECF No. 134). The CCS Defendants move for summary judgment on Mr. Jarvis's claims against the Individual CCS Defendants under § 1983 and his *Monell* claim against CCS (ECF No. 144 at 3). The CCS Defendants contend Mr. Jarvis cannot establish genuine issues of material fact on his § 1983 claims against the Individual CCS

---

[1] The Court refers to CCS and the Individual CCS Defendants collectively as the "CCS Defendants."

Defendants and his *Monell* claim against CCS (ECF No. 144 at 39). They do not move for summary judgment on Mr. Jarvis's negligence claim.

## II.        Legal Standard

Summary judgment is warranted when (1) the movant shows that there is no genuine dispute as to any material fact and (2) the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The factual record and reasonable inferences must be construed in the light most favorable to the nonmoving party. *Self v. Crum*, 439 F.3d 1227, 1230 (10th Cir. 2006). The moving party bears the initial burden, but once met, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 256 (1986). Ultimately, the Court's inquiry on summary judgment is whether the facts and evidence identified by the parties present "a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52. "[Q]uestions of intent, which involve intangible factors including witness creditability, are matters for consideration of the fact finder after a full trial." *Prochaska v. Marcoux*, 632 F.2d 848, 851 (10th Cir. 1980).

## III.        Undisputed Facts[2]

Mesa County contracted with CCS to provide medical services at the Mesa County Detention Center (the "Detention Center") (ECF Nos. 144 at 5, 162 at 1). CCS employees provide medical care for inmates at the Detention Facility. On July 12, 2018, Mr. Jarvis was admitted to the Detention Center and Defendant Alissa Embree-Nicholson, RN, performed a "receiving

---

[2] The undisputed facts are taken from both Motions for Summary Judgment and Responses thereto.

screening" of him (ECF Nos. 144 at 5-6, 162 at 1). Throughout July 2018, Mr. Jarvis was a pretrial detainee at the Detention Facility.

On July 25, 2018, during "med pass"—a period when CCS medical personnel distribute medications to inmates at the Detention Facility—Mr. Jarvis complained of vomiting, dizziness, and stumbling to a nurse (ECF Nos. 134 at 3, 148 at 2). The nurse instructed Mr. Jarvis to put in a "kite" (*Id.*) A kite is a written request for medical care (ECF Nos. 144 at 7, 162 at 1). Defendant Shawna Christensen, LPN, went to Mr. Jarvis's pod at approximately 12:00 p.m. and also instructed him to submit a kite with his symptoms (*Id.*). Ms. Christensen did not conduct a medical examination of Mr. Jarvis or contact a registered nurse or medical doctor to perform an assessment of Mr. Jarvis (*Id.*). Mr. Jarvis submitted a kite on July 25, 2018, detailing his symptoms (*Id*). Ms. Christensen saw Mr. Jarvis on July 25, 2018, and July 30, 2018 (ECF Nos. 144 at 5, 162 at 1).

On July 27, 2018, Mr. Jarvis called his girlfriend Robin Finkel to say he was feeling unwell (ECF Nos. 144 at 9, 162 at 1). Mr. Jarvis submitted another kite on July 27, 2018. The Detention Center's Director of Nursing, Defendant Heather Martinez, RN, responded to the kite (ECF Nos. 144 at 5, 162 at 1). On July 30, 2018, a Detention Center deputy sent Mr. Jarvis "to Medical" in a wheelchair, where Mr. Jarvis was seen by medical personnel (ECF Nos. 134 at 4, 148 at 3). Ms. Christensen noted at that time that Mr. Jarvis was seen regarding the kite he submitted. She did not contact a physician or emergency medical services (*Id.*). Ms. Christensen submitted a written referral to a nurse practitioner and sent Mr. Jarvis back to his pod (*Id.*). On the night of July 30, 2018, Defendant Renee Workman, RN, a booking nurse at the Detention Center, received a phone call about Mr. Jarvis's health (ECF Nos. 144 at 5, 162 at 1). Defendant Heather Stanford, RN, a

clinical nurse at the Detention Center, saw Mr. Jarvis for healthcare related matters on July 30 and 31, 2018 (ECF Nos. 144 at 5, 10; 16 at 1).

A Detention Center deputy sent Mr. Jarvis back to Medical on July 31, 2018. At that time, a nurse practitioner evaluated Mr. Jarvis, and based on his evaluation ordered that Mr. Jarvis be transported to the Emergency Department at St. Mary's Medical Center (ECF Nos. 134 at 4, 148 at 4, 144 at 11, 162 at 1). There, Mr. Jarvis was diagnosed as having suffered strokes (ECF Nos. 134 at 4, 148 at 4).

## IV.    Analysis

Having reviewed the Second Amended Complaint, the Defendants' Motions for Summary Judgment, related briefing, and relevant legal authority, the Court finds that disputes of material fact exist regarding some of Mr. Jarvis's claims. The Court addresses the Defendants' Motions for Summary Judgment in turn, granting the Motions in part and denying the Motions in part.

### A.  Mesa County's Motion for Summary Judgment

Mesa County contends Mr. Jarvis has failed to allege a direct liability claim against it and that he cannot show disputes of material fact exist regarding Mesa County's indirect liability under § 1983 (*See* ECF No. 134). The Court considers Mesa County's arguments in turn.

#### 1.  Direct Liability

Mr. Jarvis argues he has alleged a claim for direct liability against Mesa County on the grounds that Mesa County had an unconstitutional policy of prohibiting deputies from contacting Emergency Medical Services ("EMS") when inmates such as Mr. Jarvis were in medical danger (ECF No. 148 at 39-40). Mesa County contends Mr. Jarvis has not made a direct liability claim against it (ECF No. 134 at 7). The Court agrees with Mesa County.

The gravamen of Mr. Jarvis's second claim is that CCS's policies were unconstitutional (*See* ECF No. 101 at 34-37). Mr. Jarvis argues in his response to Mesa County's summary judgment motion the Second Amended Complaint contains allegations that "no one," including Mesa County's deputies, called EMS when Mr. Jarvis began displaying signs of medical distress, which demonstrates Mesa County itself had an unconstitutional policy of prohibiting deputies from contacting EMS (ECF No. 148 at 40). However, Mr. Jarvis does not allege Mesa County had a municipal policy prohibiting deputies from calling EMS—only, at most, that they failed to do so. Therefore, the Court agrees with Mesa County that Mr. Jarvis has not alleged it had any unconstitutional policy giving rise to a claim against Mesa County for *direct* liability (ECF No. 134 at 9).[3]

### 2.   Indirect Liability

Mesa County argues it is entitled to summary judgment on Mr. Jarvis's indirect liability claim because the essential question of whether CCS's policies and its employees' conduct were constitutional does not implicate Mesa County (ECF No. 134 at 11). Mr. Jarvis contends that because Mesa County contracted with CCS to provide medical care to inmates at the Detention Center, Mesa County may be liable for any constitutional violations caused by CCS's policies or customs (ECF No. 148 at 24). Mr. Jarvis further argues disputes of material fact exist as to whether

---

[3] Mesa County additionally argues that any direct municipal liability claim must fail because Mr. Jarvis does not assert any claim against a Mesa County employee directly (ECF No. 134 at 8). The Court need not address this argument. The Court notes, however, the Tenth Circuit has held claims for direct municipal liability are not dependent on the unconstitutional acts of independent officers. *See, e.g., Crowson v. Washington Cnty. Utah*, 983 F.3d 1166, 1191 (10th Cir. 2020), *cert. denied sub nom. Washington Cnty. v. Crowson*, 142 S. Ct. 224 (2021).

various CCS policies and customs violated his constitutional right to medical treatment (*See id.* at 23), and therefore summary judgment on his indirect liability claim is improper. The Court agrees.

### i.  Applicability of the Non-Delegable Duty Doctrine

Under the non-delegable duty doctrine, a public entity may be indirectly liable under § 1983 for a third party's policies when it contracts outs final policymaking authority to the third party. *See Est. of Walter by & through Klodnicki v. Corr. Healthcare Companies, Inc*., 323 F. Supp. 3d 1199, 1215 (D. Colo. 2018). To establish liability against a public entity under the doctrine, a plaintiff must present evidence satisfying three requirements. First, that the third party promulgated a policy or custom. *See Est. of Lovern by & through Dailey v. Correct Care Sols., LLC*, No. 18-CV-02573-KLM, 2019 WL 2903589, at *7 (D. Colo. July 3, 2019). Second, that the policy or custom was the "moving force" behind the violation of the plaintiff's constitutional right. *See id.* To be the "moving force" behind a plaintiff's constitutional violation, there must be a "direct causal link" between the policy and the plaintiff's injury. *See Hollingsworth v. Hill*, 110 F.3d 733, 744 (10th Cir. 1997). Third, a plaintiff must also show the third party enacted or maintained the policy with "deliberate indifference to an almost inevitable constitutional injury." *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 769 (10th Cir. 2013). If a plaintiff satisfies all three requirements, the public entity may be liable because the third party's policies are considered to have become the public entity's policies. *See Est. of Walter*, 323 F. Supp. at 1216.[4]

---

[4] This analysis does not require a showing of "culpability or causation" when the third party's policies are facially unlawful. *See Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1998). Mr. Jarvis contends CCS's policies are facially unlawful, and therefore that he is not required to show CCS maintained its policies with deliberate indifference (ECF No. 148 at 38). The Court disagrees. A policy is facially unlawful where it violates federal law. *See Barney*, 143 F.3d at

Mesa County argues the non-delegable duty doctrine is inapplicable in this case because the Tenth Circuit has not adopted it (ECF No. 134 at 10 n.7). The Court disagrees. Numerous courts have adopted and applied the non-delegable duty doctrine in similar § 1983 cases. *See, e.g.*, *Est. of Lovern*, 2019 WL 2903589, at *3-4 (collecting cases). The Court finds the reasoning of these cases persuasive. As the *Lovern* court observed, consistent with the Supreme Court's ruling in *West v. Atkins*, 487 U.S. 42, 56 (1988), "the government's obligation to provide adequate medical care is non-delegable," *Lovern*, 2019 WL 2903589, at *3; *see also Trujillo v. City & Cnty. of Denver*, No. 14-CV-02798-RBJ-MEH, 2016 WL 5791208, at *14 (D. Colo. Sept. 7, 2016). Here, the factual record demonstrates that Mesa County delegated final policymaking authority regarding Mesa County Detention Center's medical policies to CCS (ECF Nos. 148-3 at 4, 8-9; 149-2). Accordingly, the Court concludes Mesa County may be held liable for CCS's policies and customs under the non-delegable duty doctrine. *See Trujillo*, 2016 WL 5791208, at *12 (concluding public entities cannot avoid § 1983 liability by delegating its duties "to the professional judgment of others" (quotation omitted)).

### ii.   Mr. Jarvis's Claim and Summary Judgment

Applying the non-delegable duty doctrine, the Court must determine whether Mesa County is entitled to summary judgment on Mr. Jarvis's indirect municipal liability claim. According to Mesa County, Mr. Jarvis's indirect municipal liability claim fails as a matter of law (ECF No. 134 at 10). The Court considers, and rejects, Mesa County's arguments regarding Mr. Jarvis's claim in turn.

---

1307 (providing examples of facially unlawful policies that concerned sexual harassment, assault, or discrimination against female prisoners). As discussed further below, CCS's policies do not on their face violate any federal law.

First, Mesa County argues summary judgment is appropriate because Mr. Jarvis has failed to identify any CCS pattern or policy that could be unconstitutional (ECF No. 134 at 13).[5] In his response to Mesa County's summary judgment motion, Mr. Jarvis identifies several CCS policies and customs that he contends were the moving force behind the alleged deprivation of his constitutional right to medical treatment (*See* ECF No. 148 at 27).[6] For instance, Mr. Jarvis points to record evidence, including the testimony of Shawna Christensen, LPN, demonstrating that CCS had a policy requiring patients to schedule potential medical emergencies through kites (ECF No. 148 at 29). Mr. Jarvis also identifies record evidence creating material factual disputes that CCS had a custom of unreasonably delaying patients' continuation of medications and treatment (*Id.* at 35). For example, Nickole Croomes, LPN, testified that CCS did not start inmates on their medications while waiting for family members to bring their medications from home (ECF No. 148-13 at 2), and Kurtis Holmes, D.O., testified that CCS did not have a deadline for CCS nurses to begin providing inmates with their medication after intake to the Detention Center (ECF No. 148-14 at 7).

Second, Mesa County argues Mr. Jarvis cannot create a genuine issue of material fact as to whether any CCS policy caused his alleged injuries (ECF No. 134 at 13-14). The Court disagrees.

---

[5] To the extent Mesa County argues Mr. Jarvis relies on allegations in his Second Amended Complaint of CCS's allegedly unconstitutional conduct in other cases to demonstrate such a practice exists here, the Court agrees with Mesa County that allegations in the complaint are insufficient to oppose its summary judgment motion (ECF No. 134 at 12). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

[6] Mesa County summarizes these policies and practices in its reply brief (ECF No. 165 at 8). There are many types of policies and customs that may give rise to indirect liability under the non-delegable duty doctrine. *See, e.g.*, *Trujillo*, 2016 WL 5791208, at *15. Mesa County does not dispute that the CCS policies and practices Mr. Jarvis identifies qualify as practices that may give rise to indirect liability.

Mr. Jarvis has shown that genuine issues of material fact exist regarding the casual link between CCS's policies and his injuries. For example, in his expert report Dr. Jose Gutierrez, M.D., MPH, opined that Mr. Jarvis's failure to receive emergency medical treatment on July 25, 2018—due to CCS's policy that he submit a kite and wait for treatment based on the kite—"caused [him] to suffer a worsening of his stroke or additional strokes, and caused him permanent injuries" (ECF No. 148-2 at 9-10). Dr. Gutierrez further opined that CCS's failure to provide Mr. Jarvis with his medications for several days was a "trigger or catalyst" for his eventual stroke (*Id.* at 8). Ms. Croomes also testified CCS had a custom of not starting inmates on their medications while waiting for family members to bring medications from home (ECF No. 148-13 at 2). Therefore, viewing the factual record in the light most favorable to Mr. Jarvis and drawing all reasonable inferences in his favor, *see Self*, 439 F.3d at 1230, the Court concludes Mr. Jarvis has created genuine factual disputes as to whether a causal link existed between CCS's policies and his injuries. *See Hollingsworth*, 110 F.3d at 744.

Mesa County further argues that Mr. Jarvis cannot create a material factual dispute that any CCS custom or practice was enacted or undertaken with deliberate indifference (ECF No. 134 at 13-14). However, evidence in the record shows CCS frequently failed to provide other inmates at the Detention Center timely medical treatment or continuous administration of necessary prescription medications, which resulted in the inmates' physical injuries and their deprivation of adequate medical care (*See* ECF No. 148-7 at 30-33). This is sufficient to demonstrate at this stage that disputes of material fact exist as to whether CCS had notice that its policies were substantially certain to result in constitutional violations. *See Barney*, 143 F.3d at 1307-08; *see also Trujillo*, 2016 WL 5791208, at *16 (finding plaintiff showed healthcare provider was deliberately

indifferent where a violation of the plaintiff's rights was a "highly predictable or plainly obvious consequence" of the healthcare provider's custom (quotations omitted)).

Third, Mesa County argues that summary judgment is appropriate on Mr. Jarvis's indirect liability claim because the acts of CCS employees cannot be imputed to Mesa County (ECF No. 134 at 15-16). But, for the reasons set forth above, Mr. Jarvis has demonstrated factual questions exist as to whether Mesa County may be held indirectly liable under each element of the non-delegable duty doctrine. *See Est. of Walter*, 323 F. Supp. 3d at 1216. Therefore, this argument is unavailing.

Fourth, Mesa County argues Mr. Jarvis's allegations about his medical care and any factual disputes about that care are irrelevant to Mesa County's § 1983 liability (ECF No. 134 at 16-17). According to Mesa County, Mr. Jarvis's "real complaint" is that he received substandard medical care—not that his constitutional rights were violated (*Id.* at 16). To survive Mesa County's summary judgment motion, Mr. Jarvis must create a dispute of material fact that he suffered a constitutional injury. *See, e.g.*, *See Est. of Lovern*, 2019 WL 2903589, at *7. Mr. Jarvis has done so. As a pretrial detainee, Mr. Jarvis had a constitutional right to adequate medical care. *See, e.g.*, *Clark v. Colbert*, 895 F.3d 1258, 1267 (10th Cir. 2018); *Est. of Walter*, 323 F. Supp. 3d at 1209-10. A reasonable jury could infer CSS's policies violated Mr. Jarvis's constitutional right. For example, when Mr. Jarvis asked for medical assistance on July 25, 2018, related to his stroke, he was told to submit a kite consistent with CCS's policy (ECF No. 148-1 at 2-3). Drawing all reasonable inferences from the factual record in Mr. Jarvis's favor, *see Self*, 439 F.3d at 1230, Mr. Jarvis has created a dispute of material fact that CCS's policies delayed his access to emergency medical care and caused him to suffer a constitutional injury (ECF No. 148-14 at 12, 21-22; ECF

No. 148-2 at 9-10). *See McGill v. Corr. Healthcare Companies, Inc*., No. 13-CV-01080-RBJ-BNB, 2014 WL 5423271, at *6-7 (D. Colo. Oct. 24, 2014) (denying summary judgment on indirect municipal liability theory where a jury could find that healthcare provider's "policy, custom, or practice . . . directly caused the alleged constitutional deprivation" of "adequate medical care").

### 3.   Dismissal of Sheriff Lewis

Mesa County contends that Sheriff Lewis, who Mr. Jarvis sued in his official capacity, is not a proper party to this case because he is no longer the sheriff of Mesa County, and therefore he should be dismissed from this action (ECF No. 134 at 1 n.1, 8 n.6). Mr. Jarvis argues Sheriff Lewis remains a proper party to this suit (ECF No. 148 at 39). In support of his position, Mr. Jarvis cites *Reynolds v. Flynn*, No. 21-CV-01154-RM-NYW, 2022 WL 252327, at *7 (D. Colo. Jan. 27, 2022). But *Reynolds* observed only that "an official capacity claim against a sheriff is the equivalent of a suit against *the county* which the sheriff represents—not the office in which the sheriff works." *Id.* (citations omitted). *Reynolds* did not concern the factual scenario where, as here, a sheriff sued in his official capacity was replaced with another sheriff.

Nonetheless, pursuant to Federal Rule of Civil Procedure 25(d), the Court orders the substitution of Sheriff Matt Lewis with Sheriff Todd Rowell.

\* \* \*

For the reasons set forth above, Mesa County's Motion for Summary Judgment is GRANTED to the extent that Mr. Jarvis has not brought a claim for direct liability against Mesa County. The Motion is DENIED regarding Mr. Jarvis's indirect liability against Mesa County. Pursuant to Federal Rule of Civil Procedure 25(d), the Court orders the substitution of Sheriff Matt Lewis with Sheriff Todd Rowell as a party in this action.

## B.  CCS Defendants' Motion for Summary Judgment

In their motion for summary judgment, the CCS Defendants contend Mr. Jarvis cannot establish genuine issues of material fact on his § 1983 claims against the Individual CCS Defendants and his *Monell* claim against CCS (ECF No. 144 at 39). The Court considers the CCS Defendants' arguments in turn.

### 1.  The Individual CCS Defendants

In their Motion for Summary Judgment, the CCS Defendants assess Mr. Jarvis's § 1983 claims under the Fourteenth Amendment's deliberate indifference standard (*See* ECF No. 144 at 12). In his Response to the CCS Defendants' Motion for Summary Judgment, Mr. Jarvis argues certain Individual CCS Defendants' liability should be assessed under a theory of supervisory liability (ECF No. 162 at 33). The Court considers the liability of certain Individual CCS Defendants under the deliberate indifference standard, then turns to Mr. Jarvis's arguments regarding other Individual CCS Defendants' supervisory liability.

### i.      Fourteenth Amendment and Deliberate Indifference

Under the Fourteenth Amendment, pretrial detainees have a constitutional right to adequate medical care. *See, e.g.*, *Clark*, 895 F.3d at 1267. Pretrial detainees may file suit against medical professionals who allegedly violate this constitutional right. *See, e.g.*, *Est. of Beauford v. Mesa Cnty., Colorado*, 35 F.4th 1248, 1272–73 (10th Cir. 2022). In order to establish a violation of their constitutional right to adequate medical care, a pretrial detainee must show a medical professional or any other prison official acted with "deliberate indifference" to the pretrial detainee's "serious medical needs." *See Prince v. Sheriff of Carter Cnty.*, 28 F.4th 1033, 1043 (10th Cir. 2022). The

test for "deliberate indifference" involves "an objective and subjective component." *See Self*, 439 F.3d at 1230.

To satisfy the objective component, a plaintiff must produce evidence that their medical need was "sufficiently serious." *See Est. of Beauford*, 35 F.4th at 1262 (quotation omitted). A medical need is "sufficiently serious" if the need is one that has been diagnosed by a physician as mandating treatment or is "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Id.* (quotation omitted). A delay in medical care satisfies the objective component if a plaintiff produces evidence showing the delay "resulted in substantial harm." *Mata v. Saiz*, 427 F.3d at 751 (quotation omitted).

To satisfy the subjective component, a plaintiff must produce evidence of the prison official's "culpable state of mind." *See Prince*, 28 F.4th at 1045 (quotation omitted). The subjective component is satisfied if the plaintiff produces evidence, including circumstantial evidence, showing the prison official knows of or disregards an "excessive risk" to the detainee's health or safety. *Id.* (quotation omitted). A prison official must be aware of facts from which the inference could be drawn that a substantial risk of harm exists, and he must also draw the inference. *See Est. of Beauford*, 34 F.4th at 1263. A factfinder may conclude a prison official knew of a substantial risk from the fact the risk was obvious. *See Prince*, 28 F.4th at 1045.

## A. Objective Component

The Court considers first considers whether Mr. Jarvis's medical needs were sufficiently serious before proceeding to analyze the Individual CCS Defendants under the subjective component. *See Mata*, 427 F.3d at 752-755 (analyzing the objective component before analyzing subjective component for individual defendants). The CSS Defendants contend there is insufficient

evidence for Mr. Jarvis to satisfy the objective component (ECF No. 144 at 14). Mr. Jarvis argues he has sufficient evidence regarding the objective component to survive the CCS Defendants' summary judgment motion (ECF No. 162 at 24). The Court agrees with Mr. Jarvis.

The parties do not dispute that Mr. Jarvis first complained about his symptoms to a nurse during med pass on July 25, 2018 and was then told to put in a kite (ECF Nos. 134 at 3, 148 at 2). It is also undisputed that it was not until Mr. Jarvis's medical evaluation with a nurse practitioner on July 31, 2018 that he was transported to St. Mary's Hospital (ECF Nos. 134 at 4, 148 at 4). Mr. Jarvis has shown material facts regarding the consequence of this delay in medical treatment for his medical needs are in dispute. For example, evidence in the record shows that Mr. Jarvis was diagnosed as having suffered several strokes when he was admitted to the hospital (ECF No. 162-23 at 8). And the CCS Defendants concede Mr. Jarvis suffered a stroke "at some point" between July 25, 2018 and July 31, 2018 (ECF No. 144 at 16). Evidence in the record also shows the failure to transport Mr. Jarvis to the hospital on July 25, 2018—instead of July 31, 2018—caused him to suffer the worsening of his symptoms or additional strokes (ECF No. 162-23 at 10). According to the evidence Mr. Jarvis produced, he then suffered permanent injuries, including permanent brain damage (*Id.*). Therefore, drawing inference from the factual record in the light most favorable to Mr. Jarvis, *see Self*, 439 F.3d at 1230, he has created material disputes of fact that the delay in medical care resulted in substantial harm, *see Mata*, 427 F.3d at 751, and satisfied the objective component.

## B. Subjective Component

Having established Mr. Jarvis has created factual disputes regarding the objective component of the deliberate indifference test, the Court now assesses the subjective component of each Individual CCS Defendant.

### 1. Alissa Embree-Nicholson, RN

The CCS Defendants essentially argue Mr. Jarvis cannot satisfy the subjective component for Ms. Embree-Nicholson because she did no more than perform Mr. Jarvis's intake screening when he arrived at the Detention Center on July 12, 2018 (ECF No. 144 at 17). Mr. Jarvis contends the subjective component has been satisfied because Ms. Embree-Nicholson did not continue Mr. Jarvis's important medications, and knew this could result—and ultimately resulted—in having a stroke (ECF No. 162 at 27-28). The Court agrees with the CCS Defendants. Mr. Jarvis has not presented evidence that creates a dispute of material fact as to Ms. Embree-Nicholson and the subjective component.

Mr. Jarvis identifies testimony from Ms. Embree-Nicholson's deposition in which she stated she understood the risks posed by a patient not receiving hypertension medication, as well as the risks posed if detainees at the Detention Center did not have their medications brought from home (ECF No. 162-7 at 13-14, 24). Other evidence indicates Ms. Embree-Nicholson caused a delay in Mr. Jarvis's medical care by failing to immediately secure his medication (*See* ECF No. 162-27 at 17-19). However, even if evidence Mr. Jarvis identifies indicates Ms. Embree-Nicholson contributed to a delay in Mr. Jarvis receiving his important medication, the evidence does create a triable issue of fact she actually drew the inference that Mr. Jarvis *himself* would suffer a "substantial risk of serious harm" by waiting for his medication to arrive. *See Est. of Beauford*, 35

F.4th at 1264. Nor does evidence showing Ms. Embree-Nicholson was aware of Mr. Jarvis's hypertension show she disregarded an *obvious* risk to his health. *See Sparks v. Singh*, 690 F. App'x 598, 607 (10th Cir. 2017) (distinguishing potential risks to inmate's health and need for additional treatment from manifestation of obvious need for treatment). Therefore, Mr. Jarvis has not created a triable issue of fact that Ms. Embree-Nicholson had the culpable state of mind required to satisfy the subjective component.

### 2.   Nickole Croomes, LPN

The CCS Defendants argue Mr. Jarvis cannot create a triable issue of material fact regarding Ms. Croomes and the subjective component because her only involvement in Mr. Jarvis's detainment was the intake of forty-four Lisinopril pills on July 13, 2018, and then placing an order for Mr. Jarvis to begin taking the Lisinopril two days later (ECF No. 144 at 18-19). Mr. Jarvis contends the subjective component has been satisfied because Ms. Croomes's delay in starting Mr. Jarvis's medication put him at significant risk of medical harm, of which she was aware (ECF No. 162 at 28). The Court agrees with the CCS Defendants that—as to Ms. Croomes—Mr. Jarvis has not presented evidence creating a dispute of material fact regarding the subjective component.

Mr. Jarvis identifies testimony from Ms. Croomes' deposition that largely concerns CCS's policies (*See* ECF No. 162-2), except for an excerpt in which Ms. Croomes testified she waited two days after receiving Mr. Jarvis's medications before giving an order to start them (*see id.* at 28). Mr. Jarvis also identifies record evidence suggesting Ms. Croomes' conduct fell below the professional standard of care (ECF No. 162-27 at 18). This evidence is insufficient to survive the CCS Defendants' summary judgment motion. The delay in starting Mr. Jarvis's medication from

July 13, 2018, to July 15, 2018, does not create a dispute of material fact that Ms. Croomes drew the inference Mr. Jarvis faced a substantial risk of harm to his health due to the two-day delay and recklessly disregarded it. *See Martinez v. Beggs*, 563 F.3d 1082, 1089. And any negligent failure to provide adequate medical care, even one that could constitute medical malpractice, "does not give rise to a constitutional violation." *Self*, 439 F.3d at 1233 (quotation omitted).

In sum, disputes of material fact may exist regarding Ms. Croomes' negligence. The Court makes no determination on those possible factual disputes at this time. But assessing the factual record under the deliberate indifference standard, Mr. Jarvis has failed to create a triable issue of fact that she had a sufficiently culpable state of mind to satisfy the subjective component under the deliberate indifference standard. *See id.* at 1231.

### 3.  Denise McAllister, LPN

The CCS Defendants argue Mr. Jarvis cannot survive summary judgment as to his claim against Ms. McAllister because her only involvement in Mr. Jarvis's detainment was to "perform a triage of Mr. Jarvis" on July 27, 2018 (ECF No. 144 at 22). Ms. McAllister was not deliberately indifferent to Mr. Jarvis's medical needs, the CCS Defendants contend, because the record shows she performed an appropriate medical assessment of Mr. Jarvis (*Id.* at 22-23). Mr. Jarvis argues he has created disputes of material fact regarding Ms. McAllister and the subjective component because evidence shows Ms. McAllister knew she was required to report Mr. Jarvis's symptoms, based on her knowledge of the symptoms, and her failure to do so contributed to his injuries (ECF No. 162 at 30-31). The Court agrees with Mr. Jarvis.

Ms. McAllister's deposition testimony creates a triable issue of fact regarding the subjective component and her state of mind. Ms. McAllister testified that consistent vomiting,

dizziness, and stumbling qualified as abnormal medical findings (ECF No. 162-4 at 37). Mr. Jarvis reported these symptoms in his July 25, 2018 kite (*Id.* at 51). And Ms. McAllister was aware of what Mr. Jarvis complained about in the kite when she saw him on July 27, 2018 (*Id.* at 47, 51). Ms. McAllister testified that when she saw Mr. Jarvis, his kite indicated he was still on the list to see a physician (*Id.* at 40). After seeing Mr. Jarvis, Ms. McAllister left his cell without him (*Id.* at 51). Construing the factual record and all reasonable inferences in the light most favorable to Mr. Jarvis, *see Self*, 439 F.3d at 1230, the evidence shows Ms. McAllister was aware that Mr. Jarvis had been displaying documented abnormal medical symptoms for two days but did not take him to receive necessary medical care after seeing him on July 27, 2018. This evidence has created a triable issue of fact because a factfinder could conclude that a substantial risk to Mr. Jarvis's health was obvious, and yet Ms. McAllister disregarded this risk when she left Mr. Jarvis in his cell. *See Est. of Beauford*, 35 F.4th at 1263. Therefore, Mr. Jarvis has survived the CCS Defendants' summary judgment motion as to his claim against Ms. McAllister.

### 4.  Katelyn Stults, QMAP

The CCS Defendants argue Mr. Jarvis's claim against Ms. Stults cannot survive summary judgment because her only involvement in Mr. Jarvis's detainment was the administration of Lisinopril during med pass, and that when she administered the medicine Mr. Jarvis did not appear to have a serious medical condition (ECF No. 144 at 23-24). Mr. Jarvis contends Ms. Stults should have recognized Mr. Jarvis faced a risk of harm during certain med passes, and therefore she was deliberately indifferent to his medical needs (ECF No. 162 at 33). The Court agrees with the CCS Defendants.

Mr. Jarvis identifies testimony from Ms. Stults in which she described documenting dates when Mr. Jarvis refused medication, and that she did not recall checking on Mr. Jarvis on July 29, 2018 (ECF 162-5 at 3-4). Although Ms. Stults testified that walking abnormally could set off a "red flag," as well as that she saw Mr. Jarvis walking with the assistance of two other detainees, Ms. Stults testified that she never had a conversation with Mr. Jarvis (*Id.* at 5-7). Mr. Jarvis also offers evidence indicating Ms. Stults's failure to contact a CCS nurse regarding Mr. Jarvis was a breach of the standard of care (ECF No. 162-27 at 19-20). This evidence—which concerns only Ms. Stults's observation that Mr. Jarvis needed assistance to walk—is insufficient to create a triable issue of material fact that Ms. Stults had the requisite state of mind under the subjective component. Evidence showing Mr. Stults observed Mr. Jarvis walking with the assistance of two other detainees is insufficient to show she drew an inference that Mr. Jarvis faced a substantial risk of serious harm, *see Mata*, 427 F.3d at 751, or that this made the risk of stroke obvious, *see Est. of Beauford*, 35 F.4th at 1264. At bottom, this "symptom" alone does not establish she was aware of a risk to Mr. Jarvis's health and recklessly disregarded it. *See Martinez*, 563 F.3d at 1089. And to the extent Ms. Stults' conduct was negligent, this does not satisfy the deliberate indifference standard. *See Self*, 439 F.3d at 1233 (quotation omitted).

### 5.  Shawna Christensen, LPN

The CCS Defendants argue that Ms. Christensen was not deliberately indifferent to Mr. Jarvis's medical needs because when she examined him on July 25, 2018, and July 30, 2018, Mr. Jarvis did not present any symptoms that indicated a serious medical condition warranting immediate referral to a registered nurse or doctor (ECF No. 144 at 25). Mr. Jarvis contends summary judgment on his claim against Ms. Christensen is inappropriate because the evidence

shows Ms. Christensen was aware that Mr. Jarvis presented abnormal findings that should have been reported to a registered nurse or doctor (*See* ECF No. 162 at 29). The Court agrees with Mr. Jarvis that his claim against Ms. Christensen survives summary judgment.

The parties do not dispute that Ms. Christensen saw Mr. Jarvis on July 25, 2018 (ECF Nos. 144 at 7, 162 at 1). Ms. Christensen testified that on July 25, 2018 she took Mr. Jarvis's blood sugar after he had complained about his dizziness, unsteadiness, and vomiting (ECF No. 162-20 at 25). Ms. Christensen further testified that she understood these symptoms indicated a possible stroke (*Id.* at 13-14). Ms. Christensen did not report Mr. Jarvis to a nurse practitioner or medical doctor after seeing him on July 25, 2018; instead, she told him to submit a kite (*Id.* at 25, 44). On July 30, 2018, Ms. Christensen testified that she took Mr. Jarvis's vital signs (*Id.* at 48). At that time Ms. Christensen was aware Mr. Jarvis was experiencing dizziness, imbalance, blurry vision, vomiting, and that his face felt "rubbery" (*Id.* at 48). Despite knowing Mr. Jarvis was experiencing these "abnormal findings," Ms. Christensen did not immediately call a nurse practitioner or doctor (*Id.*).

This evidence is sufficient to create a triable issue of material fact regarding Ms. Christensen and the subjective component. Construing the factual record and reasonable inferences in the light most favorable to Mr. Jarvis, *see Self*, 439 F.3d at 1230, Ms. Christensen had notice on July 25, 2018 and July 30, 2018 that Mr. Jarvis was displaying signs of a possible stroke. The risk to Mr. Jarvis's health was obvious. *See Mata*, 427 F.3d at 752. Moreover, there is a clear factual dispute that Ms. Christensen drew the inference Mr. Jarvis faced a substantial risk of serious harm. *See id.* at 751. Indeed, Ms. Christensen stated in her deposition that "you want to react quickly if you believe someone is having a stroke if the symptoms present that" (ECF No. 162-20 at 15).

Accordingly, Mr. Jarvis has survived the CCS Defendants' summary judgment motion regarding his claim against Ms. Christensen.

### 6.   Renee Workman, RN

The CCS Defendants argue summary judgment is appropriate as to Mr. Jarvis's claim against Ms. Workman because her only involvement in Mr. Jarvis's detainment was accepting a phone call from a Detention Center deputy on July 30, 2018 (ECF No. 144 at 26). According to the CCS Defendants, in that phone call Ms. Workman was asked to respond to an inmate's stroke, and that she said she was unable to but referred the deputy to another CCS nurse (*Id.*) Mr. Jarvis essentially argues the subjective component is met because Ms. Workman did not respond to Mr. Jarvis's stroke on July 30, 2018 (ECF No. 162 at 32). The Court agrees with the CCS Defendants that summary judgment on Mr. Jarvis's claim against Ms. Workman is appropriate.

Even construing the record evidence in the light most favorable to Mr. Jarvis, Ms. Workman's inaction on the night of July 30, 2018 does not demonstrate deliberate indifference to Mr. Jarvis's medical needs. Although Ms. Workman was aware Mr. Jarvis was having a possible stroke (ECF No. 162-27 at 24) and did not personally respond, to show deliberate indifference the record must also demonstrate Ms. Workman *disregarded* the risk to Mr. Jarvis's health. *See Prince*, 28 F.4th at 1046. Evidence in the record makes clear Ms. Workman did not disregard Ms. Jarvis's stroke—in fact, she told the deputy to contact another nurse so Mr. Jarvis could receive medical care (*See* ECF No. 162-28 at 24). Therefore, the CCS Defendants are entitled to summary judgment on Mr. Jarvis's claim against Ms. Workman.

### ii.      Supervisory Liability and § 1983

In his Response to the CCS Defendants' Motion for Summary Judgment, Mr. Jarvis argues four Individual CCS Defendants are liable under § 1983 based on their roles as supervisors at the Detention Center.

In a § 1983 action, a plaintiff may impose "supervisory liability" on a defendant in their individual capacity by satisfying three requirements that establish an "affirmative link" between the defendant and the plaintiff's injury. *See Cox v. Glanz*, 800 F.3d 1231, 1248 (10th Cir. 2015). First, the plaintiff must show the supervisor's "personal involvement" in the alleged constitutional violation. *See id.* A supervisor is personally involved in a constitutional violation where they "actively participate[] in or acquiesce[] to" the violation. *Ransaw v. Bornhoft*, No. 20-CV-03584-NYW, 2022 WL 715128, at *21 (D. Colo. Mar. 10, 2022) (citation omitted). Second, the plaintiff must show a "sufficient causal connection." *Cox*, 800 F.3d at 1248. A "sufficient causal connection" exists between the supervisor's personal participation and the constitutional violation where "the defendant set in motion a series of events that the defendant knew or reasonably should have known would cause others to deprive the plaintiff of her constitutional rights." *Schneider*, 717 F.3d at 768. Third, the plaintiff must show the defendant acted with a "culpable state of mind." *Cox*, 800 F.3d at 1248 (quotation omitted). In the case of alleged violations of a plaintiff's Fourteenth Amendment rights, the applicable state of mind is deliberate indifference. *See Est. of Hocker by Hocker v. Walsh*, 22 F.3d 995, 998 (10th Cir. 1994); *Schneider*, 717 F.3d at 769. "Deliberate indifference" in the context of supervisory liability requires proof the supervisor disregarded a "known or obvious consequence" of their action, or that the supervisor "knowingly created a substantial risk" of constitutional injury. *Schneider*, 717 F.3d at 769 (quotations omitted).

The Court now considers Mr. Jarvis's arguments regarding the Individual CCS Defendants he contends are liable under § 1983 as supervisors in turn.

### A.  Heather Stanford, RN

Mr. Jarvis argues Ms. Stanford is liable as a supervisor under § 1983 because she supervised other nurses in the Detention Center, implemented unconstitutional policies as a supervisor, and acquiesced in the violations of Mr. Jarvis's constitutional right to medical care (ECF No. 162 at 33-34). The CCS Defendants contend there is no evidence showing Ms. Stanford had an affirmative link to Mr. Jarvis's alleged injuries (ECF No. 169 at 11). The Court disagrees.

In support of his contention that disputes of material fact exist as to whether Ms. Stanford is liable as a supervisor under § 1983, Mr. Jarvis points to testimony from Ms. Stanford's deposition. Ms. Stanford is a registered nurse (ECF No. 162-19 at 4). Ms. Stanford testified that at the Detention Center, per CCS policy, LPNs were required to report to a registered nurse or medical doctor any abnormalities they identified in a patient's medical condition (*Id.* at 16). Registered nurses were also required to see a patient if an LPN reported any patient medical abnormalities (*Id.*). Ms. Stanford testified, however, that she did not give LPNs any training sessions on how to report patient medical abnormalities (*Id.* at 17). And regarding Mr. Jarvis, Ms. Stanford testified that Ms. Christensen did not report his symptoms to her but "wrote them down" after observing him (*Id.* at 31-32). Construing the factual record and reasonable inferences in the light most favorable to Mr. Jarvis, *see Self*, 439 F.3d at 1230, Ms. Stanford's failure to train LPNs on CCS's reporting policy and failure to act on Ms. Christensen's notes regarding Mr. Jarvis's symptoms—and failure to properly supervise Ms. Christensen's treatment of Mr. Jarvis—create

material factual disputes regarding Ms. Stanford's personal involvement in the violation of Mr. Jarvis's constitutional right to medical care. *See Ransaw*, 2022 WL 715128, at *21.

Mr. Jarvis has also demonstrated material factual disputes exist regarding the causal connection between Ms. Stanford's conduct and Mr. Jarvis's injury. Evidence in the record indicates the failure of CCS's LPNs to properly report Mr. Jarvis's symptoms led to a delay in the treatment of his strokes. As such, a reasonable jury could find Ms. Stanford's failure to train LPNs on how to report abnormal medical findings "set in motion" events that Ms. Stanford reasonably should have known would lead to Ms. Jarvis's injuries. *See Schneider*, 717 F.3d at 768. Finally, Mr. Jarvis has shown a material factual dispute exists regarding the obvious consequence of Ms. Stanford's failure to train the LPNs on CCS's policy for reporting patient's medical abnormalities. *See Schneider*, 717 F.3d at 769. Indeed, the record indicates that Ms. Christensen failed to follow this protocol (*See, e.g.*, ECF No. 128). Therefore, factual disputes exist regarding Ms. Stanford's state of mind.

For these reasons, material factual disputes preclude entry of summary judgment on Mr. Jarvis's claim against Ms. Stanford in favor of the CCS Defendants.

### B.  Kurtis Holmes, D.O.

Mr. Jarvis argues Dr. Holmes is liable as a supervisor under § 1983 because he implemented unconstitutional policies at the Detention Center and acquiesced in the violation of Mr. Jarvis's constitutional right (ECF No. 162 at 35). The CCS Defendants contend there is no evidence showing Dr. Holmes had an affirmative link to Mr. Jarvis's alleged injuries (ECF No. 169 at 11). The Court disagrees.

Dr. Holmes was the medical director of the Detention Center (ECF No. 162-3 at 45). He testified that in this capacity he "provide[d] oversight" for the CCS staff, and as medical director was responsible for reviewing CCS's Detention Center policies (*Id.* at 12, 18-19). Mr. Jarvis identifies testimony from the factual record in which Dr. Holmes stated it was standard operating procedure for CCS employees to tell Detention Center inmates to put in a kite when they reported experiencing medical symptoms (*Id.* at 42). Further, Dr. Holmes testified it was acceptable for Ms. Christensen to take Mr. Jarvis's vital signs on July 30, 2018, without performing a more thorough objective assessment (*Id.* at 45).

The evidence Mr. Jarvis identifies creates material factual disputes regarding Dr. Holmes's supervisory liability. First, a reasonable jury could find Dr. Holmes's implementation of CCS policies at the Detention Center regarding inmate care and kites constitutes personal involvement in the violation of Mr. Jarvis's constitutional right. *See Ransaw*, 2022 WL 715128, at *21. Second, Mr. Jarvis has presented evidence demonstrating a factual dispute exists as to whether Dr. Holmes's implementation of CCS's kite policy set in motion events that he should have reasonably expected would lead to Mr. Jarvis's injuries. *See Schneider*, 717 F.33d at 768. For instance, by following the standard operating procedure of putting in a kite (*See* ECF No. 162-3 at 42), the factual record indicates Mr. Jarvis received delayed medical care for his symptoms. Third, a reasonable jury could find Dr. Holmes disregarded the obvious consequences CCS's kite system posed for inmates, like Mr. Jarvis, who experienced medical emergencies that required immediate medical attention but could not promptly receive it due to CCS's operating procedures. *See id.* at 769.

Accordingly, material factual disputes preclude entry of summary judgment on Mr. Jarvis's claim against Dr. Holmes in favor of the CCS Defendants.

### C.  Heather Martinez, Director of Nursing

Mr. Jarvis argues Ms. Martinez is liable as a supervisor under § 1983 because she implemented unconstitutional policies at the Detention Center that caused a delay in Mr. Jarvis's medical care, resulting in his injuries (ECF No. 162 at 35). The CCS Defendants contend there is no evidence showing Ms. Martinez had an affirmative link to Mr. Jarvis's alleged injuries (ECF No. 169 at 11). The Court disagrees.

Ms. Martinez was CCS's Director of Nursing at the Detention Center (*See* ECF No. 162-14 at 11). Mr. Jarvis has produced evidence showing that, in this role, Ms. Martinez was responsible for planning and implementing the Detention Center's nursing program (*See id.*). Ms. Martinez further testified in her deposition that the "system" for patients like Mr. Jarvis to ultimately see a healthcare provider required submitting a kite and waiting then to be seen by an LPN (*Id.* at 46). And from July 25, 2018, when he first presented his symptoms, to July 30, 2018, when he was diagnosed as having suffered strokes, Ms. Martinez testified Mr. Jarvis received healthcare "within the system" at the Detention Center (*Id.* at 70).

This evidence creates material factual disputes that Ms. Martinez is liable as a supervisor for Mr. Jarvis's injuries under § 1983. First, evidence indicates that Ms. Martinez personally participated in Mr. Jarvis's injury. Construing the factual record and all reasonable inferences in the light most favorable to Mr. Jarvis, *see Self*, 439 F.3d at 1230, Ms. Martinez oversaw CCS's kite policy and supervised CCS's LPNs who administered the policy. *See Ransaw*, 2022 WL 715128, at *21. A reasonable jury could find Ms. Martinez's oversight and supervision of the LPNs

and the kite system—i.e., overseeing the "system" that delayed Mr. Jarvis's emergency healthcare for several days—set in motion events that led to the violation of his constitutional rights. *See Schneider*, 717 F.3d at 768. And Mr. Jarvis has identified evidence in the factual record indicating Ms. Martinez disregarded the obvious consequence of the kite system and the delay in medical care it engendered: the violation of Mr. Jarvis's right to adequate medical care. *See id.* at 769.

Accordingly, material factual disputes preclude entry of summary judgment on Mr. Jarvis's claim against Ms. Martinez in favor of the CCS Defendants.[7]

### D.  Lori McLaughlin, HSA

Mr. Jarvis argues Ms. McLaughlin is liable as a supervisor under § 1983 because she implemented unconstitutional policies as a supervisor and acquiesced in the violations of Mr. Jarvis's constitutional right to medical care (ECF No. 162 at 36). The CCS Defendants contend there is no evidence showing Ms. McLaughlin had an affirmative link to Mr. Jarvis's alleged injuries (ECF No. 169 at 11). The Court agrees.

Mr. Jarvis offers evidence showing that as Health Service Administrator for the Detention Center, Ms. McLaughlin ensured patients' medications were timely administered (ECF No. 162-1 at 4-5). Ms. McLaughlin testified that she was also responsible for "fixing" any instances where CCS staff "missed" doing "a blood sugar check or something" (ECF No. 162-1 at 4-5). Where problems were identified, Ms. McLaughin testified, she would work to resolve problems through e-mails to staff or trainings (*Id.* at 5). At bottom, the evidence shows Ms. McLaughlin's primary

---

[7] For this reason the Court need not address whether Ms. Martinez is liable under § 1983 for deliberate indifference.

responsibilities concerned administration of patient medication and addressing problems with patients' healthcare after the problems occurred.

The gravamen of Mr. Jarvis's argument is that Ms. McLaughlin is liable as a supervisor under § 1983 because she approved LPNs instructing inmates who needed immediate medical care to submit kites (*See* ECF No. 162 at 36). However, Ms. McLaughlin's approval of the kite policy as CCS's Rule 30(b)(6) deponent is insufficient to create factual disputes that she is liable as a supervisor in her *individual* capacity. *See Cox*, 800 F.3d at 1248. Mr. Jarvis identifies no evidence in the record demonstrating any personal involvement Ms. McLaughlin had in the violation of Mr. Jarvis's constitutional right to medical care, or how any decision she made set in motion events that she *herself* "reasonably should have known" would lead to the violation of Mr. Jarvis's rights. *See Schneider*, 717 F.3d at 768. Therefore, summary judgment in favor of the CCS Defendants is appropriate regarding Ms. McLaughlin's supervisor liability under § 1983.

### 2.  CCS and *Monell* Liability

The CCS Defendants argue they are entitled to summary judgment on Mr. Jarvis's § 1983 claim against CCS because fundamentally there is insufficient evidence to link Mr. Jarvis's alleged injury to any CCS policy, custom, or practice (ECF No. 144 at 32). Mr. Jarvis argues his § 1983 claim against CCS survives summary judgment because record evidence demonstrates an unconstitutional CCS policy or custom caused his injury (*See* ECF No. 162 at 38). The Court agrees with Mr. Jarvis. Disputes of material fact preclude entry of summary judgment on his § 1983 claim against CCS.

A private entity may be liable under § 1983 for violating a plaintiff's constitutional rights. *See Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1216 (10th Cir. 2003) (extending *Monell* liability to

private entities). A private entity is liable for a plaintiff's constitutional violations where its employee or employees violate the plaintiff's constitutional rights. *See Est. of Beauford*, 35 F.4th at 1275. Once a plaintiff produces evidence showing an entity's employee violated the plaintiff's constitutional rights, the plaintiff must show the entity is liable for the violation. *See, e.g.*, *Washington v. Unified Gov't of Wyandotte Cnty., Kansas*, 847 F.3d 1192, 1197 (10th Cir. 2017). To show the private entity is liable for a violation of a plaintiff's constitutional rights, the plaintiff must satisfy three elements: (1) that the private entity had an official policy or custom; (2) the policy or custom caused the plaintiff's injury; and (3) the policy was maintained with deliberate indifference to the plaintiff's constitutional injury. *See, e.g.*, *Quintana v. Santa Fe Cnty. Bd. of Commissioners*, 973 F.3d 1022, 1034 (10th Cir. 2020). These are the same elements a plaintiff must satisfy to establish indirect liability against a municipality under the non-delegable duty doctrine. *See Est. of Lovern*, 2019 WL 2903589, at *7; *cf. Quintana*, 973 F.3d at 1034.

First, the CCS Defendants argue the evidence does not establish an underlying constitutional violation by any Individual CCS Defendant (ECF No. 144 at 33). Not so. As detailed above, Mr. Jarvis has created triable disputes of fact regarding certain Individual CCS Defendants' violations of his constitutional rights. Second, the CCS Defendants contend that no CCS policy or custom caused Mr. Jarvis's injury or was maintained with "deliberate indifference" (*See* ECF No. 144 at 36-39).[8] This argument is unavailing, as set forth above regarding the issue of Mesa County's indirect liability. And the Court concludes Mr. Jarvis has survived Mesa County's

---

[8] Mr. Jarvis contends no underlying constitutional violation by a specific employee is necessary for a private entity to face liability under § 1983 (*See* ECF No. 162 at 37). The Court need not reach this argument, however, because Mr. Jarvis has created factual disputes regarding Individual CCS Defendants' violations of his constitutional rights.

Motion for Summary Judgment on his claim for indirect liability. Therefore, because the elements for *Monell* liability against a private entity and a municipal entity's indirect liability under the non-delegable duty doctrine are the same, *see Quintana*, 973 F.3d at 1034**,** the Court concludes Mr. Jarvis survives the CCS Defendants' Motion for Summary Judgment on his § 1983 against CCS.

## V.      Conclusion

Consistent with the above analysis, Mesa County's Motion for Summary Judgment (ECF No. 134) is GRANTED in part and DENIED in part. The CCS Defendants' Motion for Summary Judgment (ECF No. 144) is GRANTED in part and DENIED in part. The Court ORDERS the substitution of Sheriff Matt Lewis with Sheriff Todd Rowell.

DATED this 22nd day of September 2022.

BY THE COURT:

_____
Charlotte N. Sweeney
United States District Judge