IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Charlotte N. Sweeney

Civil Action No. 1:20-cv-02028-CNS-GPG

JAMES JARVIS,

     Plaintiff,

v.

LORI MCLAUGLIN, RN, HAS,
CORRECT CARE SOLUTIONS LLC,
WELLPATH LLC,
BOARD OF COUNTY COMMISSIONERS OF MESA COUNTY,
MATT LEWIS, Sheriff, in his official capacity,
KURTIS HOMES, DO,
ALISSA EMBREE-NICHOLSON, RN,
RENEE WORKMAN, RN,
HEATHER MARTINEZ,
HEATHER STANFORD, RN,
SHAWNA ROCHELLE CHRISTENSEN, LPN,
NICKOLE CHANTEL CROOMES, LPN
DENISE MCALLISTER, LPN, and
KATELYN STULTS, MA,

     Defendants.

---

## ORDER

---

Before the Court is Defendants Correct Care Solutions, LLC; Wellpath, LLC; Lori McLaughlin, RN, HSA; Kurtis Holmes, D.O.; Alissa Embree-Nicholson, RN; Renee Workman, RN; Heather Martinez, RN; Heather Stanford, RN; Shawna Rochelle Christensen, LPN; Nickole Chantel Croomes, LPN; Denise McAllister, LPN; and Katelyn Stults, QMAP's (collectively the "CCS Defendants'") Motion to Exclude Certain Opinions of Plaintiff's Expert, Jose Gutierrez,

M.D., Pursuant to Federal Rule of Evidence 702 and Federal Rule of Civil Procedure 37 (the "Motion"). For the following reasons, the CCS Defendants' Motion is DENIED.

## I.      Background

This civil action arises from Defendants' alleged failure to provide constitutionally adequate medical care to Plaintiff James Jarvis, resulting in long-term and permanent injuries (*See* ECF No. 101). On October 17, 2021, Mr. Jarvis filed his Second Amended Complaint (*See id.*). Mr. Jarvis brings three claims against Defendants: a claim against the Individual CCS Defendants under 42 U.S.C. § 1983; a claim under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978), against the Board of County Commissioners of Mesa County, Sheriff Matt Lewis, Correct Care Solutions, LLC, and Wellpath, LLC; and a negligence claim against the CCS Defendants (*see* ECF No. 101).

Mr. Jarvis made his affirmative expert disclosure of Dr. Gutierrez on November 16, 2021 (*See* ECF No. 136-1), and his rebuttal expert disclosure of Dr. Gutierrez on January 18, 2022 (*See* ECF No. 136-2). On May 9, 2022, the CCS Defendants filed the instant Motion (ECF No. 136). In their Motion, the CCS Defendants contend that Mr. Gutierrez is not qualified to provide certain expert opinions, and that his deposition testimony is neither reliable nor relevant (*Id.* at 6-8). For these reasons, the CCS Defendants argue, Dr. Gutierrez should be excluded from offering specified opinions related to Mr. Jarvis's medical care and condition (*See id.* at 8; ECF No. 158 at 2, 4). The Motion is fully briefed (*See* ECF Nos. 136, 152, 158).

## II.      Legal Standard

Federal Rule of Evidence 702 governs the admissibility of expert testimony. *See, e.g.*, *Daubert v. Merrell Dow Pharms., Inc*., 509 U.S. 579, 590–91 (1993). The party submitting the

expert's testimony must show by a preponderance of the evidence that the testimony is admissible. *See, e.g.*, *Bethel v. Berkshire Hathaway Homestate Ins. Co*., No. 17-CV-01456-CMA-KLM, 2022 WL 1037572, at *2 (D. Colo. Apr. 1, 2022). To determine whether expert testimony is admissible, a court must make several determinations. First, it must determine whether an expert is qualified. *See id.* at *2. An expert is qualified if they have the "knowledge, skill, experience, training, or education" to render an opinion. *Roe v. FCA US LLC*, 42 F.4th 1175, 1180 (10th Cir. 2020) (citing Fed. R. Evid. 702). Second, the court must determine whether the expert's testimony is reliable. An expert's testimony is reliable if the methodology employed by the expert is based on "sufficient data, sound methods, and the facts of the case." *Id.* (citation omitted). The expert's testimony must be scientifically sound, but "absolute certainty" is not required. *Dodge v. Cotter Corp*., 328 F.3d 1212, 1222 (10th Cir. 2003) (quotation omitted). Third, the expert's testimony must be relevant. Testimony is relevant if it "logically advances a material aspect" of the case and has a "valid scientific connection" to the case's disputed facts. *Norris v. Baxter Healthcare Corp*., 397 F.3d 878, 884 n.2 (10th Cir. 2005) (citation omitted). Doubts about testimony's usefulness should be resolved in favor of admissibility. *See Robinson v. Missouri Pac. R. Co.*, 16 F.3d 1083, 1090 (10th Cir. 1994) (quotation omitted).

### III.    Analysis

Having reviewed the CCS Defendants' Motion, related briefing, attached exhibits, and relevant legal authority, the Court finds that Dr. Gutierrez is a qualified expert, and that his deposition testimony is reliable and relevant. The Court addresses the arguments in CCS Defendants' Motion in turn.

### A.  Dr. Gutierrez's Qualifications

The CCS Defendants argue that Dr. Gutierrez is not qualified to issue an opinion regarding the prevention of strokes (ECF No. 136 at 6). Specifically, the CCS Defendants contend that Dr. Gutierrez is not qualified to offer opinions on whether Mr. Jarvis's failure to receive medications was a cause of his stroke (*Id.*). Mr. Jarvis argues essentially that Dr. Gutierrez is a certified neurologist with a thorough background in stroke research, which qualifies him as an expert (*See* ECF No. 153 at 5). The Court agrees with Mr. Jarvis.

Dr. Gutierrez holds M.D. and M.P.H. degrees and is a member of the American Board of Psychiatry and Neurology (ECF No. 153-1 at 1-3). Dr. Gutierrez is a member of several editorial boards for medical publications, including one dedicated to strokes, has received numerous research grants, has taught several courses on strokes as well as supervised others in conducting stroke research, and is the preceptor at New York Presbyterian Hospital's stroke ward (*See generally id.*). The Court has no difficulty concluding that Mr. Jarvis has met his burden of showing Dr. Gutierrez has the knowledge, skill, expertise, and education that qualifies him to render him an opinion in this case. *See Roe*, 42 F.4th at 1180.

### B.  Reliability of Dr. Gutierrez's Testimony

The CCS Defendants next contend that Dr. Gutierrez's testimony is not reliable, claiming that excerpts from Dr. Gutierrez's deposition demonstrate his testimony is not based on a valid scientific methodology or reasoning (*See* ECF No. 16 at 8). For these reasons, the CCS Defendants argue, Dr. Gutierrez should be precluded from offering certain opinions regarding Mr. Jarvis's medical condition (*Id.*). Mr. Jarvis essentially argues that Dr. Gutierrez's testimony

is reliable because he reviewed relevant case materials and drew his scientific opinions from those materials (*See, e.g.*, ECF No. 153 at 15). The Court agrees with Mr. Jarvis.

Mr. Jarvis points to Dr. Gutierrez's deposition testimony in which he testified that he used a scientific methodology called "shift analysis" to determine that if Mr. Jarvis been transferred to the hospital on July 25, 2018, one or more of his symptoms would have been less severe (ECF No. 153-5 at 24-25). Dr. Gutierrez testified this opinion was based on his knowledge and use of this methodology (*Id.*). Mr. Jarvis also identifies deposition testimony in which Dr. Gutierrez stated that, based on his review of the evidence in the case, the "most likely" explanation for Mr. Jarvis's condition was that either a second stroke happened before he was transported to the hospital "or the first one extended in size" (*Id.* at 21). This testimony demonstrates that Dr. Gutierrez used a sound scientific method to evaluate Dr. Jarvis's medical condition based on the facts of the case. Although the CCS Defendants have identified deposition testimony where Dr. Gutierrez stated, for instance, certain opinions were "hard to quantify specifically" (ECF No. 136-3 at 9), absolute certainty is not required for expert testimony to qualify as reliable. *See Dodge*, 328 F.3d at 1222. Therefore, Mr. Jarvis has met his burden of showing Dr. Gutierrez's testimony is reliable. *See Roe*, 42 F.4th at 1180.

## C.  Relevance of Dr. Gutierrez's Testimony

Finally, the CCS Defendants argue that Dr. Gutierrez's opinions are irrelevant because they are not based on adequate medical knowledge, and therefore would not be helpful to a jury (ECF No. 136 at 8). Mr. Jarvis contends that Dr. Gutierrez's testimony is relevant and will be helpful to a jury because his opinions flow from the facts of the case and are offered within a reasonable degree of certainty (ECF No. 153 at 15). The Court agrees with Mr. Jarvis.

Dr. Gutierrez's testimony concerns Mr. Jarvis's strokes, what caused them, and their effects on his health (*See* ECF No. 153-5 at 14, 21-25). This testimony logically advances a material aspect of Mr. Jarvis's case: the causes and consequences of Mr. Jarvis's strokes. *See Norris*, 397 F.3d at 884 n.2. Further, there is a scientific connection between Dr. Jarvis's testimony and disputed facts in the case, such as whether any delay in Mr. Jarvis's treatment caused his strokes. *See id.* Accordingly, Dr. Gutierrez's testimony relates to issues in Mr. Jarvis's case, and would help a trier of fact understand them. *See Brown v. Nat'l R.R. Passenger Corp.*, No. 18-CV-03030-JLK, 2020 WL 8277569, at *1 (D. Colo. Nov. 12, 2020). Therefore, Mr. Jarvis has met his burden of showing Dr. Gutierrez's testimony is relevant.

## IV.    Conclusion

Consistent with the above analysis, the CCS Defendants' Motion to Exclude Certain Opinions of Plaintiff's Expert, Jose Gutierrez, M.D., Pursuant to Federal Rule of Evidence 702 and Federal Rule of Civil Procedure 37 (ECF No. 136) is DENIED.

DATED this 22nd day of September 2022.

BY THE COURT:

Charlotte N. Sweeney
United States District Judge

6